

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00370-CV

_____

IN THE MATTER OF J.H.

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-123492-24

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

J.H. (Jordan)[1] appeals from the juvenile court's "Order of Transfer to a Criminal District Court and Waiver of Jurisdiction." *See* Tex. Fam. Code Ann. § 54.02. In one point, Jordan challenges the factual sufficiency of the evidence presented "to prove any of the four prongs of Texas Family [Code Section] 54.02(f) as required to support a transfer." *See id.* § 54.02(f). We affirm.

## I.  Procedural Background

The juvenile court had exclusive original jurisdiction over Jordan's delinquency proceeding. *See id.* §§ 51.02(2)(A), 51.04(a); *In re D.S.*, No. 02-17-00050-CV, 2017 WL 3187021, at *1 (Tex. App.—Fort Worth July 27, 2017, pet. denied) (mem. op.). In its petition requesting the juvenile court to waive its exclusive original jurisdiction and to "transfer [Jordan's case] to the appropriate [Tarrant County] District Court . . . for criminal proceedings" so that he could be tried as an adult, *see* Tex. Fam. Code Ann. § 54.02(b), the State alleged that Jordan "intentionally or knowingly possess[ed] a controlled substance, namely psilocin of four grams or more but less than four hundred grams, including any adulterants or dilutants," *see* Tex. Health & Safety Code Ann. § 481.116(a), (d).

The juvenile court held a hearing, made the requisite statutory findings, waived its jurisdiction, and transferred Jordan's case "to the appropriate District Court (with

---

[1]Jordan—an alias, *see* Tex. R. App. P. 9.8(c)(2)—was 16 years old at the time of the offense alleged in the State's waiver-and-transfer petition and 17 years old at the time of the hearing on the petition.

criminal jurisdiction) or Criminal District Court of Tarrant County, Texas for proper criminal proceedings." *See* Tex. Fam. Code Ann. § 54.02(a), (c), (f). By law, Jordan's appeal from that order "has precedence over all other cases." *Id.* § 56.01(h).

## II.    Facts Established at the Hearing

Two witnesses testified at the hearing: Jesse Lathrop, a detective for the Arlington Police Department, and Wesley Jean, a court intake officer with Tarrant County Juvenile Services.

### A. Lathrop's testimony

On the morning of September 15, 2023, a student at Bowie High School in Arlington, Texas, provided a school resource officer with a tip about another student smoking marijuana in a bathroom. The tipster, who wanted to remain anonymous, also provided "a social media video that appeared to be the subject taking a video of themselves smoking in a bathroom." The school resource officer contacted the assistant principal, who was able to review footage and identify Jordan as the subject.

The assistant principal and security took Jordan to a classroom where the assistant principal conducted an administrative search and located some marijuana in Jordan's backpack. Jordan was told multiple times to pull his pockets out but refused, so the school resource officer searched Jordan's person and located a tobacco vape pen and a small bag of mushrooms. Jordan was arrested. The mushrooms were

analyzed and tested positive for 5.86 grams of psilocin, a controlled substance.[2] *See* Tex. Health & Safety Code Ann. § 481.103(a)(5)(B)(ii).

Detective Lathrop also testified that Jordan had subsequently been charged with a murder unrelated to his arrest for possession that had also occurred at Bowie High School. Admitted into evidence, the indictment charged Jordan with committing the murder "on or about the 24th day of April, 2024."

### B. Jean's testimony

Jean testified that the juvenile court had ordered a psychological assessment, but when it came time to actually perform it, Jordan declined to participate. Jean also testified that Jordan had never been on juvenile probation or "DPP"[3] but was put on "supervisory caution" in the present case.[4] He was still on supervisory caution when

---

[2]"Psilocin is a Schedule I, Penalty Group 2 hallucinogenic substance obtained from certain mushrooms indigenous to tropical and subtropical regions of South America, Mexico, and the United States of America." *Gentry v. State*, No. 11-08-00325-CR, 2010 WL 2112715, at *1 n.1 (Tex. App.—Eastland May 27, 2010, pet. ref'd) (mem. op., not designated for publication).

[3]"The Deferred Prosecution Program (DPP) is a limited supervision program designed to give the young person in trouble for the first time the chance to rehabilitate himself or herself without the stigma of a criminal conviction." Deferred Prosecution Program (DPP), https://www.tarrantcountytx.gov/en/criminal-district-attorney/criminal-division/deferred-prosecution.html (last visited Jan. 23, 2025).

[4]Supervisory caution is a "summary disposition" that can be made by a probation officer, prosecuting attorney, judge, or other authorized person. *Disposition Category Definitions*, Texas Juvenile Justice Department (September 2016), https://www.tjjd.texas.gov/wp-content/uploads/2024/03/JCMS_TrainingDisposition Definitions.pdf (last visited Jan. 23, 2025); *see* Tex. Fam. Code Ann. §§ 52.03, 52.031, 52.032, 59.004; Tex. Hum. Res. Code Ann. § 137.152(a), (b).

the alleged murder happened. Jean further testified that Juvenile Services did not "have a community plan set in stone for [Jordan] just because of the [murder charge] that he's facing downtown."

## III. Discussion

The Texas Family Code provides that a juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

> (A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; or

> (B) 15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning that offense; and

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

Tex. Fam. Code Ann. § 54.02(a).

In making the determination required by the foregoing statute, the juvenile court

shall consider, among other matters:

> (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

> (2) the sophistication and maturity of the child;

> (3) the record and previous history of the child; and

> (4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f).

In his only appellate point, Jordan argues, "The evidence presented was factually insufficient to prove any of the four prongs of Texas Family [Code Section] 54.02(f) as required to support a transfer." Jordan contends that "[u]nder Texas Family Code [Section] 54.02(f), the State must prove one or more of the four prongs of this provision" and that "[t]he State did not meet its burden of proving any of the four elements of [Section] 54.02(f)." But Section 54.02(f) "does not mandate that any particular factor be true, state that the factors are exclusive, or limit the purpose for which the statutory factors may be considered." *Ex parte Thomas*, 623 S.W.3d 370, 382 (Tex. Crim. App. 2021). By the plain language of Section 54.02(f), the four enumerated "matters" are factors that the juvenile court "shall consider," not elements that the State must prove. *See* Tex. Fam. Code Ann. § 54.02(f); *see also Juda v. MarineMax, Inc.*, No. 01-18-00138-CV, 2018 WL 6693586, at *5 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (mem. op.) (explaining difference between "elements"

6

and "factors"); *Element*, Black's Law Dictionary (12th ed. 2024) ("A constituent part of a claim that must be proved for the claim to succeed"); *Factor*, Black's Law Dictionary (12th ed. 2024) ("An agent or cause that contributes to a particular result").

By a preponderance of the evidence, the State bears the burden of persuading the juvenile court that waiving its jurisdiction is appropriate. *In re A.B.*, No. 02-18-00274-CV, 2019 WL 983751, at *2 (Tex. App.—Fort Worth Feb. 28, 2019, no pet.) (mem. op.); *see* Tex. Fam. Code Ann. § 51.17(a) ("Except . . . for the burden of proof to be borne by the state in adjudicating a child to be delinquent or in need of supervision . . . or otherwise when in conflict with a provision of this title, the Texas Rules of Civil Procedure govern proceedings under this title."). Under a factual-sufficiency challenge, we consider all the evidence presented to determine if the court's finding is so against the great weight and preponderance of that evidence as to be clearly wrong and unjust. *D.S.*, 2017 WL 3187021, at *2. Put another way, we set the finding aside only if, after considering and weighing all the evidence pertinent to that finding, we determine that the credible evidence supporting it is so weak or so contrary to the overwhelming weight of all the evidence that it should be set aside. *In re G.B.*, 524 S.W.3d 906, 914 n.13 (Tex. App.—Fort Worth 2017, no pet.).

If the juvenile court's findings are supported by legally and factually sufficient evidence,[5] then we review the ultimate waiver decision under an abuse-of-discretion

---

[5]Evidence is legally sufficient to support a finding under review if "more than a scintilla of evidence" supports the finding. *D.S.*, 2017 WL 3187021, at *2; *G.B.*, 524

7

standard. *A.B.*, 2019 WL 983751, at \*3; *D.S.*, 2017 WL 3187021, at \*3; *G.B.*, 524 S.W.3d at 916–17. To determine whether the juvenile court abused its discretion, we ask whether it acted without reference to the guiding rules or principles in reaching its decision. *A.B.*, 2019 WL 983751, at \*3; *D.S.*, 2017 WL 3187021, at \*3.

The factfinder alone judges the witnesses' credibility and the weight to be given their testimony and is free to accept all, reject all, or accept only parts of any witness's testimony. *A.B.*, 2019 WL 983751, at \*3. The factfinder is free to accept or reject any apparent inconsistencies in the testimony and reconcile them. *See Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018); *A.B.*, 2019 WL 983751, at \*3.

The juvenile court's order recites that, in making its determinations, it considered, among other matters, the very factors listed in Section 54.02(f). The juvenile court also stated on the record at the hearing:

> [T]he Court having considered all the competent evidence, having reviewed the diagnostic study and having considered whether the offense was against person or property, having considered the sophistication and maturity of the child, having considered the record and previous history of the child, and having considered the protection of the public and likelihood of rehabilitation of the child within the Juvenile Justice System, will find that there is probable cause for the offense of possession of a controlled substance of Penalty Group 2 over 4 grams, but less than 400 grams[,] and this Court will waive [its] jurisdiction and order the district clerk of Tarrant County, Texas[,] to assign this matter to an adult criminal court for prosecution.

S.W.3d at 914 n.13. Here, Jordan has made only a factual-sufficiency challenge to the evidence, not a legal-sufficiency challenge. But evidence that is factually sufficient is necessarily legally sufficient. *In re A.N.*, No. 02-22-00036-CV, 2022 WL 2071966, at \*2 (Tex. App.—Fort Worth June 9, 2022, pet. denied) (mem. op.).

Specifically[,] the reason for this transfer, [Jordan], is that while this offense is not against person or property and that there is not much previous history, what I'm concerned mostly on this is the protection of the public, especially, the likelihood of rehabilitation within the Juvenile Justice System. At this point it is my opinion that if you did, in fact, commit the murder that you are indicted for in the adult courts, there's nothing the Juvenile Justice System can do for you, especially, since you have this felony pending when the alleged murder occurred. So this is one of those I'm kind of stuck in a spot, best case scenario, you didn't commit the murder. I wish we had a chance to rehabilitate you for drug possession; however, if you did, in fact, commit the murder and you are found to have done so then there's simply nothing we can do for -- for possessing mushrooms and marijuana when you were guilty of homicide and that is what's influenced my decision the most.

I did consider all the factors, . . . but I'm largely influenced by the idea that there's very little likelihood of rehabilitation in the Juvenile System if you are, in fact, convicted for the offense of what you are indicted for.

While the State introduced limited evidence pertinent to the four prongs of Section 54.02(f), we cannot say that the credible evidence supporting the juvenile court's finding is so weak or so contrary to the overwhelming weight of all the evidence that the juvenile court's finding should be set aside.

For example, although the possession offense was not against a person or property, "[t]he nature and seriousness of the specific alleged offense, alone, may justify the juvenile court's waiver of jurisdiction 'notwithstanding other [S]ection 54.02(f) factors, so long as the offense: (1) is substantiated by evidence at the transfer hearing, and (2) is of sufficiently egregious character.'" *In re Z.M.*, No. 02-21-00213-CV, 2021 WL 4898851, at *5 (Tex. App.—Fort Worth Oct. 21, 2021, no pet.) (mem. op.) (quoting *In re M.A.T.*, No. 13-18-00295-CV, 2018 WL 5289550, at *7 (Tex.

9

App.—Corpus Christi–Edinburg Oct. 25, 2018, no pet.) (mem. op.)). Here, it was uncontested at trial that Jordan was caught in possession of a large amount of an illegal drug at his high school. The legislature has classified this offense as a second-degree felony, *see* Tex. Health & Safety Code Ann. § 481.116(a), (d), and provided for an enhanced punishment because "the offense was committed . . . on . . . the premises of a school," *see id.* § 481.134(c)(1).

"Regarding the second prong of [Section] 54.02(f)," Jordan argues, "there was absolutely no evidence before the court pertaining to [his] sophistication and maturity." Jordan is mistaken. We have said that the purpose of inquiring into a juvenile's sophistication and maturity "is to determine whether he appreciates the nature and effect of his voluntary actions and whether they were right or wrong." *In re A.F.*, No. 02-23-00457-CV, 2024 WL 725511, at *5 (Tex. App.—Fort Worth Feb. 22, 2024, no pet.) (mem. op.) (quoting *In re A.K.*, No. 02-20-00410-CV, 2021 WL 1803774, at *19 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.)). Here, Detective Lathrop's testimony established that Jordan (1) filmed a video of himself smoking at school, (2) posted it on social media, and (3) had to be searched by a school resource officer after refusing repeated requests to empty out his pocket that turned out to contain the psilocin. This evidence showed that Jordan had the maturity to appreciate the crime he had allegedly committed and the sophistication to try to avoid getting caught. *See id.* (holding that "the juvenile court . . . had the discretion to resolve the conflicts in the evidence in favor of transfer" where "the State presented

evidence that [the juvenile] had the maturity to appreciate the crime he had allegedly committed and the sophistication to try to avoid blame").

There is no evidence in the record that Jordan had any record or previous history with the juvenile justice system. Jean testified that Jordan had never been on juvenile probation or DPP. The pre-diagnostic study[6] states that he had no previous record. But it also states that he had begun "experiment[ing] with marijuana [his] freshman year of high school" and "was using marijuana weekly" during the pendency of this case. And it states that the assistant principal who had conducted the administrative search had located three individual marijuana blunts "in a secret compartment" of Jordan's backpack.

Finally, Jordan's pending murder charge and consequent detention in Tarrant County Jail greatly diminished or at least limited his likelihood of rehabilitation by the use of procedures, services, and facilities currently available to the juvenile court.[7]

---

[6]*See* Tex. Fam. Code Ann. § 54.02(d).

[7]Other than the indictment, the State did not introduce any evidence to prove that Jordan actually committed the murder. In fact, the only other record evidence about the murder was Detective Lathrop's testimony that it had occurred at Bowie High School. Based on Texas Penal Code Section 2.01, Jordan argues that the "indictment standing alone is proof of nothing." *See* Tex. Penal Code Ann. § 2.01 ("The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial."). By its plain language, that statute applies in a criminal trial, where the burden of proof is "beyond a reasonable doubt." *See id.* However, the State does not even try to argue on appeal that the juvenile court could have inferred just from the indictment, without more, that Jordan had committed the murder, and we decline to so hold here. But the

11

Consistent with Jean's testimony that Juvenile Services did not "have a community plan set in stone for [Jordan] just because of the [murder charge] that he's facing," the pre-diagnostic study states that "due to the nature of th[e possession] offense and due to the pending adult charges, the Juvenile Probation Department [was] not recommending a community plan." Jean also testified that Juvenile Services "would recommend a community plan if he wasn't facing the offense that he's facing downtown," but "if he's being detained, he can't engage in services in the community because he's not in the community."[8] As pertinent to this prong, Jean appeared to give inconsistent answers when he testified on cross-examination:

> Q. Yeah, but does Juvenile Probation ever provide services to their clients who might be on probation or -- yeah, who might be on probation that are in the Tarrant County Jail?
>
> A. Yes.
>
> Q. They can?
>
> A. I believe so.

---

juvenile court could have reasonably considered the evidence, including testimony, that Jordan was in jail on a murder charge at the time of the hearing.

[8]This case appears to present an anomaly. We have found no other case in which a child within the jurisdiction of a juvenile court was accused of committing an offense that met the criteria of Texas Family Code Section 52.04(a); turned 17 while the State's waiver-and-transfer petition was pending before the juvenile court; and was indicted prior to the waiver-and-transfer hearing on a felony charge alleged to have been committed after he had turned 17 *and* where the only evidence of the extraneous charged felony introduced at the waiver-and-transfer hearing was the indictment itself. But again, the juvenile court could have reasonably weighed Jean's testimony and the pre-diagnostic study when considering this fourth prong.

. . . .

Q. Okay. I understand that, but with the offense that he's facing and knowing that he's in the Tarrant County Jail, can services be provided to him by the Tarrant County Juvenile Probation Department?

A. I don't believe so.

The juvenile court, as factfinder, was free to accept or reject any apparent inconsistencies in the testimony and reconcile them. *See Anderson*, 550 S.W.3d at 616; *A.B.*, 2019 WL 983751, at *3. As an appellate court, we must avoid substituting our judgment for the factfinder's. *A.B.*, 2019 WL 983751, at *3.

Considering all the evidence presented, we conclude that the juvenile court's finding "is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *See D.S.*, 2017 WL 3187021, at *2. "Because there was probative, factually sufficient evidence to support the juvenile court's transfer decision, and because that decision reflected a principled application of the statutory factors, the juvenile court did not abuse its discretion." *See A.F.*, 2024 WL 725511, at *6. We overrule Jordan's point.

## IV.  Conclusion

Having overruled Jordan's sole point, we affirm the juvenile court's order.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: January 30, 2025

13